UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM F. HOLEKAMP, Trustee of
the WILLIAM F. HOLEKAMP
REVOCABLE TRUST,

                    Plaintiffs,

        v.

WESTPORT LLC, et al.,

                    Defendants.

CASE NO. C24-5658 BHS

ORDER

THIS MATTER is before the Court on defendant Westport's motion for partial summary judgment on plaintiff William Holekamp's breach of contract claim, Dkt. 52.

On July 19, 2021, Holekamp and Westport entered into a two-page contract (the Yacht Retrofit Agreement) under which Westport agreed to retrofit Holekamp's 130-foot yacht for sport fishing. Paragraph three of the Agreement incorporates the attached, detailed five-page cost estimate, named the "Work scope":

Subject to the terms of this Agreement, Westport shall, at its own expense, provide Owner with its assessment of what refit work is to be done, how much it will cost and how long it will take to complete ("Work scope"). The estimate for the Work scope is based on minimal engineering and prior to inspection of the Yacht by Westport. Subject to actual inspection and an

ORDER - 1

engineering review, the Work scope may be adjusted (upwards or downwards) as necessary to accomplish the refit work. Work scope has been provided to the Owner in two separate documents dated 11/25/2020 and 6/22/2021, and attached as Exhibit A.

Dkt. 52-2 at 2. The work scope includes an itemized list of the work to be performed, along with an estimated cost breakdown for materials, freight, and labor. *See id.* at 4–7. Several items are listed as "TBD." *Id.* at 7–8. Excluding those items, the total estimated cost of the project was $2,387,358.12. *Id.*

Paragraph six of the Agreement provides the estimated yacht delivery date:

Owner will deliver Yacht to Westport on or before September 22, 2021 to commence work as outlined in Work scope. Westport agrees to complete the retrofit work and deliver the Yacht by the later of April 30, 2022 or the date adjusted pursuant to this agreement. If unforeseen problems occur, Westport shall have additional time to cure those problems and make delivery.

Dkt. 52-2 at 2. The Agreement also includes an integration clause:

This Agreement contains (i) the entire understanding of the parties with respect to the Yacht Conditions, Repair Estimates and Repair Work, (ii) supersedes all prior understandings, [and] (iii) it may only be amended by a written instrument duly executed by both parties, . . .

*Id.* Holekamp and Westport's president signed the Agreement and initialed each work scope page.

After the Agreement was signed, Holekamp requested that the retrofit comply with American Bureau of Shipping ("ABS") standards to maintain the vessel's ABS class certification. Dkt. 70 at 2. Holekamp was notified that this change would increase the cost but was never told how much, and he was not required to sign a new contract. Dkt. 51-1 at 10–11. In addition, Holekamp requested other changes while Westport worked on the yacht. For such requests, a document called an Additional Work Authorization

ORDER - 2

("AWA") was sometimes completed. Of the 123 additional items requested, only 24 had a corresponding AWA. Dkt. 62 at 3; *see* Dkt. 62-2.

On July 14, 2022, Westport finished the yacht and returned it to Holekamp, who was not satisfied with the work, the time it took, or the cost. Dkt. 56 at 6. Holekamp sued Westport for negligent misrepresentation, fraud, violation of the Washington Consumer Protection Act (CPA), breach of contract, unjust enrichment, negligence, and breach of warranty. He seeks damages for the cost to complete the work above the initial estimate, and costs to repair and replace equipment. Dkt. 30 at 14.

On February 24, 2025, the Court granted Westport's motion to dismiss Holekamp's state law tort and CPA claims as precluded by federal maritime law, leaving only his breach of contract and breach of warranty claims.

Westport seeks summary judgment on Holekamp's breach of contract claim. It argues that the "only prices set forth in the [Agreement] were estimates," and that its "only obligation . . . was to provide estimates, which it did." Dkt. 52 at 8. Westport emphasizes that the work scope was provided before it had even seen the vessel and before Holekamp had finalized the list of work to be performed. Dkt. 52 at 3, 8. Westport contends it never "committed to do the work for a fixed price," and the Agreement did not specify the "manner and timing of communications about cost overruns." Dkt. 61 at 2, 4. It also argues that, although not required, Westport provided Holekamp with a weekly "captain's review" comparing the initial estimate for each of the work scope items and the actual charges. *Id.* at 4. Westport also asserts that even if it

ORDER - 3

breached the Agreement, summary judgment is still warranted because Holekamp cannot prove that he suffered any damages. Dkt. 52 at 14–15.

Holekamp contends that the Agreement is more like an "offer" than an "estimate." Dkt. 56 at 9. He contends that "Westport offered to perform the retrofit for the price quoted in the Work scope, [he] agreed to it and the parties initialed and attached the Work scope as Exhibit A." *Id*. He asserts that "the contract established a firm price for the tasks and equipment listed, and a methodology for changing it." *Id.* at 10.  Holekamp contends Westport agreed to deliver the completed vessel by April 30, 2022, and its failure to comply with that term caused him pecuniary loss. *Id.* at 11.

## DISCUSSION

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

ORDER - 4

jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Federal maritime law governs this contract dispute, and it applies the same contract principles as the common law. *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013). To establish breach of a maritime contract, a plaintiff must demonstrate "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Holcim Canada Holdings LLC v. Barge Eagle, Inc.*, 737 F.Supp.3d 1106, 1110–11 (W.D. Wash. 2024) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). The first factor, the existence of an agreement, depends on mutual assent, meaning an offer and acceptance between the contracting parties. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (citing *Weiss v. Lonnquist*, 153 Wn. App. 502, 511, 224 P.3d 787 (2009). An enforceable contract requires a "meeting of the minds" on the essential terms of the parties' agreement. *McEachern v. Sherwood & Roberts, Inc.*, 36 Wn. App. 576, 579, 675 P.2d 1266 (1984) (citation modified).

Generally, a court's interpretation of a contract is a "mixed question of law and fact." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985). "When the district court's decision is based on analysis of the contractual language and an

ORDER - 5

application of the principles of contract interpretation, that decision is a matter of law." *Id*.; *see also Breaux v. Halliburton Energy Serv*., 562 F.3d 358, 364 (5th Cir. 2009) (quoting *Foreman v. Exxon Corp*., 770 F.2d 490, 496 (5th Cir. 1985) ("Where 'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law.'")).

Westport argues that Holekamp fails to establish the first element of a breach of contract claim. It asserts that nothing in the parties' signed Agreement required it to perform the retrofit work at a fixed price and absent that, it cannot be held liable for breach. The Court agrees.

Holekamp claims that the "cost to complete the retrofit exceeded the cost estimate under the Contract by $2,257,795.04." Dkt. 30 at 12. But that is the point, the figure was only an *estimate*. The Court acknowledges that the Agreement's use of the term "estimate," by itself, is not dispositive; the term's legal effect depends on context. *See Shahar v. Hotwire, Inc*., No. 12-CV-06027-JSW, 2013 WL 3877785, at *4 (N.D. Cal. July 25, 2013). Here, however, the Agreement makes clear that Westport intended to provide only a projected cost, not a firm, fixed price commitment. Instead, the Agreement expressly permitted the cost to be adjusted "upwards or downwards[] as necessary to accomplish the refit work" and left certain costs "to be determined." Dkt. 52-2 at 2, 7–8.

ORDER - 6

This makes sense because Westport provided its estimate before it even saw the yacht, and before Holekamp requested ABS compliance[1] and other changes.

Holekamp argues the Agreement required changes to any material term within the work scope to be amended only by "written amendment signed by both parties," such as through an AWA. Dkt. 56 at 10. He asserts that Westport breached the Agreement by failing to provide AWA's for each change in the work scope.

This argument misreads the Agreement. A variation between an estimate and the final cost does not alter the Agreement; indeed, the Agreement expressly anticipates and permits such changes. *See* Dkt. 52-2 ("[T]he Work scope may be adjusted (upwards or downwards) as necessary to accomplish the retrofit work."). Moreover, the Agreement does not reference or require AWAs for alterations. If it did, the parties would have been required to execute an AWA even when the final cost was less than the estimate, a result neither party would reasonably demand. Holekamp cannot establish breach where he identifies no firm price term, acknowledges the Agreement was only an estimate, and cites no provision requiring any particular method or timing for notifying him of cost differences.

This interpretation is further supported by the parties' conduct. Westport provided weekly "captain's reviews" itemizing estimated and actual costs. There is no evidence Holekamp objected to any differences, was unaware of those costs, or required an AWA

---

[1] Westport's president Wakefield testified that ABS compliance was the "most significant" reason that the retrofit cost exceeded the original estimate. Dkt. 62 at 2.

approving the changes.[2] If Holekamp had a concern about those numbers or considered the reports insufficient, he could have objected sooner.

Neither can Holekamp establish breach of contract for delivering the yacht in July 2022. The Agreement states, "Westport agrees to complete the retrofit work and deliver the Yacht by the later of April 30, 2022 or the date adjusted pursuant to this agreement. If unforeseen problems occur, Westport shall have additional time to cure those problems and make delivery." Dkt. 52-2 at 2. Nowhere in the contract does Westport promise to have the project complete by a specific date. For a contract term to be enforceable, it must be sufficiently definite to allow the court "to determine whether a breach has occurred and to identify an appropriate remedy." *U Street Music Hall, LLC v. JRC Standard Properties, LLC*, 285 A.3d 1250, 1255-56 (D.C. 2022). Holekamp fails to meet that burden.

Finally, Holekamp fails to prove damages. Absent a contractual provision requiring completion of the yacht by a specific date, he has no basis to require Westport to bear the costs of a voluntary trip planned during that period. Holekamp was likely aware of any delay; his representative was on site and received regular updates.

Westport's motion for summary judgment, Dkt. 52, on Holekamp's breach of contract claim is **GRANTED**.

Because the parties' Local Rule 37 expedited joint motion for discovery, Dkt. 70, relates only to the breach of contract claim, and not to Holekamp's remaining breach of

---

[2] Of the 123 additional work items requested by Holekamp, 99 have no corresponding AWA. Dkt. 62 at 3.

warranty claim, it is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 23rd day of April, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 9