UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM F. HOLEKAMP, Trustee of the WILLIAM F. HOLEKAMP REVOCABLE TRUST,

                    Plaintiffs,

        v.

WESTPORT LLC, et al.,

                    Defendants.

CASE NO. C24-5658 BHS

ORDER

THIS MATTER is before the Court on defendant Westport's motion for sanctions, Dkt. 54, based on plaintiff Holekamp's statements that he is a Missouri resident, when he is in fact a Florida resident for tax purposes.

On November 8, 2023, Holekamp sued Westport in Missouri state court for damages related to a dispute about Westport's work to retrofit his 130-foot yacht for sport fishing. Dkt. 5. Holekamp's complaint asserted that he is a Missouri resident. He also claimed that the Court had personal jurisdiction over Westport in Missouri because he signed the contract there, was "first injured" there, and "transacted business" there by

ORDER - 1

negotiating, communicating, and entering into a contract with him while he was at his home in Missouri. Dkt. 5 at 2.

On December 14, 2023, Westport removed the case to the Eastern District of Missouri based on diversity jurisdiction. Dkt. 1. One month later, it moved to dismiss for lack of personal jurisdiction or in the alternative to transfer venue. It argued that it had no offices in Missouri, paid no taxes there, and conducted no work there. It maintained that all the "arrangements for the work on [Holekamp's] yacht, and the work itself, were made and done in Washington." Dkt. 14 at 5.

Holekamp responded that "[h]e is now and was at all relevant times a resident of St. Louis County, Missouri." Dkt. 17 at 2. He contended that he "initiated this relationship from his home in St. Louis," and that the "vast majority of [] communications . . . occurred while [he] was present in St. Louis." Dkt. 17-1 at 4. Holekamp argued that "St. Louis should be considered the nexus of their business relationship . . . , and should not be shocked that [he] chose to sue them in that locale, particularly when it is [his] home." Dkt. 17 at 11.

The Missouri district court granted Westport's motion to transfer venue to the Western District of Washington, concluding that the interests of justice supported the transfer. The court explained that Westport's allegedly tortious and contractual conduct occurred primarily in Washington at Westport's facilities, and that the majority of witnesses live and work there. Dkt. 19 at 15.

On October 1, 2025, Holekamp testified at his deposition that his "current home address" was in Ocean Ridge, Florida and that he had lived there for approximately 20

ORDER - 2

years. Dkt. 54-1 at 8. Holekamp testified that he considered himself a Florida resident. *Id.* at 19. When questioned if that statement was consistent with his prior statement that he had "at all relevant times" been a resident of Missouri, he conceded that his prior testimony was "not entirely accurate." *Id.* at 20. However, Holekamp testified that he also owned a home in St. Louis. *Id.* at 8.

Westport seeks sanctions, contending that Holekamp acted in bad faith by repeatedly misrepresenting to Westport and the Court that he was a Missouri resident. It seeks an award of reasonable attorney fees for the time incurred in defending its motion to transfer venue and preparing its motion for sanctions:

> [I]f Holekamp had been truthful and admitted that he was a Florida resident, there would . . . have been no factual basis for suggesting that Westport had any connection to the State of Missouri, and Westport would not have had to devote time and expense to litigating the personal jurisdiction motion."

Dkt. 54 at 6.

Holekamp responds that his pleadings were not false. He asserts that he "does reside in St. Louis as that term is used under Missouri law." Dkt. 63 at 3. He explains that Missouri law permits an individual to be a resident of more than one State, and that an individual can be a Missouri resident for venue purposes while domiciled in a different state for tax purposes. *Id.* at 1–2. He also argues that even if his affidavit was "not entirely accurate," it certainly was not made in bad faith; he was born in Missouri, raised there, maintains a home there, and owns a recreational lake there. *Id.* at 3. Holekamp argues that his opposition to transfer venue turned less on which state he claimed as his residence and more about Holekamp's physical presence in Missouri, where he

ORDER - 3

negotiated and communicated with Westport, and ultimately signed the contract. Dkt. 63 at 4.

## DISCUSSION

Sanctions are "an extraordinary remedy." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436, 437 (9th Cir. 1996). To impose sanctions under the Court's inherent authority, the Court must make a finding that defense counsel "willfully abused the judicial process or otherwise acted in bad faith." *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982). The Court must use care to exercise this power with caution, restraint, and discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

Westport argues that this case is similar to *Silver Fern Chemical, Inc. v. Lyons*, No. 2:23-cv-00775-TL, 2024 WL 3983202, at *1 (W.D. Wash. Aug. 29, 2024), where the Court awarded sanctions for an employee's misstatements in an affidavit. There, Silver Fern Chemical sued its former employees for breaching their confidentiality agreement by contacting Silver Fern customers while working for their new employer. Silver Fern moved for a temporary restraining order (TRO) to prevent the defendants from contacting, soliciting, or conducting business with its customers. One defendant's response included testimony that "[a]ny of the deals I've put together after moving . . . are a result of customers *reaching out to me* to request we continue our relationship." *Id.* at *1 (emphasis added). The Court denied Silver Fern's TRO motion. The same defendant later admitted he had actually "reached out" to multiple customers after his departure and engaged or attempted to engage in business transactions. *Id.* As a result of this admission,

the Court granted Silver Fern's request for sanctions, concluding that the defendants acted in bad faith by misleading the Court as to their behavior. The Court explained that the "misrepresentation was material because it improperly shaded the Court's understanding of a core issue at the TRO stage and impacted the final outcome." *Id.* at *3.

Unlike in *Silver Fern*, Holekamp's not "entirely accurate" assertion that he was a Missouri resident does not rise to the level of bad faith. Despite considering Florida his primary residence, it is undisputed that Holekamp also owns a home in Missouri and spends time there each year. For venue purposes, Missouri law recognizes that a person may be a resident of more than one state. *See State ex rel. Quest Commc'ns Corp. v. Baldridge*, 913 S.W.2d 366, 370 (Mo. Ct. App. 1996) ("Residence means living in a particular locality. . . [a person] may have more than one residence." (quoting BLACK'S LAW DICTIONARY 1176 (5th ed. 1979)). Moreover, Holekamp never testified that Missouri was his exclusive residence. Instead, he emphasized that the "majority of his communications," whether by email or telephone, occurred while he was at his home in Missouri and that he signed the contract there. Dkt. 17 at 6. Nothing in the record suggests that these statements are false.

Most importantly, Holekamp's residency did not impact the district court's conclusion that it lacked personal jurisdiction over Westport in Missouri and that Washington was the more appropriate venue. Dkt. 19. The court explained that "mere communications" in Missouri between Westport and Holekamp regarding the contract, and Holekamp's payment under the contract, was not sufficient to establish jurisdiction.

*Id.* at 9. The court also concluded that transfer to Washington best served the interests of justice. *Id.* at 15. There is no evidence that Westport suffered prejudice from any confusion that Holekamp's primary residence was in Florida rather than Missouri.

Because the Court does not find that Holekamp acted in bad faith by asserting he was a Missouri resident or that Westport suffered any prejudice as a result, Westport's motion for sanctions, Dkt. 54, is **DENIED**.[1]

**IT IS SO ORDERED.**

Dated this 27th day of April, 2026.

BENJAMIN H. SETTLE
United States District Judge

---

[1] In a surreply, Dkt. 68, Holekamp moved to strike the email exchange submitted by Westport in its reply brief. Because the Court's Order does not rely on this email exchange, Holekamp's motion is **DENIED** as moot.

ORDER - 6